[No. E011049. Fourth Dist., Div. Two. Nov. 5, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
BENJAMIN HOWARD VAN FOSSAN, Defendant and Appellant.

[Opinion certified for partial publication.*]

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 1 through 4a and part 4c.

## COUNSEL

Eric S. Multhaup, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Janelle B. Davis and William M. Wood, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RAMIREZ, P. J.**—A jury convicted Benjamin Howard Van Fossan of first degree murder, during which he used a knife. He was sentenced to prison and appeals claiming evidence was improperly excluded and admitted at trial, prosecutorial misconduct occurred and the jury was misinstructed. We reject his contentions and affirm.

### FACTS

For about two weeks, the victim, his roommate, Van Fossan, and the latter's girlfriend shared an unfinished garage converted into a room which was attached to an acquaintance's home. Van Fossan felt that his girlfriend was acting "flirty" and ignoring him during the time they stayed with the victim and he asked the roommate if she believed the victim would "mess around with" the girlfriend.

Near the end of that period, on December 6, 1990, the victim and his roommate were present when Van Fossan and his girlfriend got into a verbal and physical altercation. The victim and the roommate told Van Fossan to leave his girlfriend alone, so he went outside and spent some time in his car before returning to the room.

Everything seemed to go well the following day until that evening, when the roommate awoke to another argument between Van Fossan and his girlfriend over whether the latter should leave with him. When Van Fossan tried to physically take his girlfriend with him, the victim intervened and began arguing with Van Fossan. Van Fossan accused the victim of having sex with his girlfriend, and the latter denied it. The victim ordered Van Fossan to get out. Van Fossan insisted on gathering up his possessions. After a while, the victim grew impatient and picked up a pair of hedge clippers, which he held by the blade at his side. Just before leaving, Van Fossan told the victim,

" 'You fucked up; you're trying to fuck with my girl friend, and nobody fucks with my girl friend and gets away with it.' "

About 10 minutes later, the victim, who was not in possession of a weapon, volunteered to go outside, at the girlfriend's request, to see if Van Fossan had thrown her clothes out. As the victim was just about to go out the door, he suddenly spun around and landed outside, where he began wrestling with Van Fossan. Eventually, Van Fossan ended up on top of the victim and he stabbed him numerous times in the head, neck and upper chest with a knife, killing him. Most of the foregoing facts were testified to at trial by the victim's roommate.

Van Fossan took off in his car and drove to his father's house in San Diego County, stopping on the way to clean the blood off the knife and himself. Once there, he showered, ate, packed more food, borrowed money from his father's girlfriend, threw his bloody clothes into a dumpster and took off for his grandmother's home in Kansas.

His car broke down in Arizona, and when a highway patrol officer stopped to help him, she discovered there was a warrant out for his arrest in connection with this offense. When the officer told Van Fossan why she was placing him under arrest, he attempted to escape, but she pulled her service weapon on him and threatened to shoot him, so he stopped. On the way to be transferred to another law enforcement agency, Van Fossan asked the officer a number of questions about the various degrees of murder and manslaughter and the death penalty.

A jailhouse informant had written a letter concerning the case to the prosecutor during trial. He testified that while Van Fossan was incarcerated in Riverside County jail, the latter told him that he believed the victim and his girlfriend were having an affair. Van Fossan said that he should have shot the victim days before the murder while they were out together doing target practice. Van Fossan gave the informant another reason why he disliked the victim and he called him a "weak son of a bitch."

Van Fossan told the informant that after he left the room, shortly before the murder, he went to his car where he retrieved his knife. He said he was "going to take care of business." Van Fossan returned to the room in time to see the victim come outside, then he "cut" him.

The informant also said that Van Fossan asked him to take the roommate, who was a relative of the informant's, out of state so she could not testify against Van Fossan.

At trial, Van Fossan claimed that he was unarmed when he began wrestling with the victim, but the victim had the knife. He was able to get the knife away from the victim and he stabbed the latter only after the victim would not let go of him and stuck him in the eye with his thumb. Van Fossan testified that he was afraid the victim was going to kill him. He denied making the statements the jailhouse informant claimed he did. He claimed he only stabbed the victim once, even though the coroner found multiple stab wounds on the victim's body.

## ISSUES AND DISCUSSION

1.-3.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

### 4. *Jury Instruction*

#### a. *Jailhouse Informant**

. . . . . . . . . . . . . . . . . . . . . . . . .

#### b. *CALJIC No. 2.90*

Van Fossan requested that CALJIC No. 2.90 be given. That instruction provides: ". . . [A] defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty. This presumption places upon the People the burden of proving him guilty beyond a reasonable doubt. [¶] . . . [R]easonable doubt is defined as follows: It is not a mere possible doubt, because everything relating to human affairs and depending on moral evidence is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge."

██ Van Fossan now claims that the giving of this instruction constitutes reversible error because of its reference to moral certainty, which, he argues, violates *Cage v. Louisiana* (1990) 498 U.S. 39 [112 L.Ed.2d 339, 111 S.Ct. 328].

Beginning in 1991, and every year thereafter (including three times in 1992), the California Supreme Court has rejected the same argument that

*See footnote, *ante,* page 1680.

Van Fossan advances here. In *People* v. *Jennings* (1991) 53 Cal.3d 334, 385-386 [299 Cal.Rptr. 780, 807 P.2d 1009], the court held, "By supplemental letter brief, defendant argues the reasonable doubt instructions provided his jury were faulty and require reversal. Although he cites *Cage* v. *Louisiana* (1990) [498] U.S. [39] [112 L.Ed.2d 339, 111 S.Ct. 328] (per curiam), in support, that case is distinguishable. In *Cage*, the jury was instructed that it must acquit if it entertained a reasonable doubt about the accused's guilt. The term 'reasonable doubt,' however, was defined as a doubt '"founded upon a real tangible substantial basis and not upon mere caprice and conjecture. It must be such doubt as could give rise to a grave uncertainty . . . . It is an actual substantial doubt." ' ([Citation], italics omitted.)

"The high court reversed, reasoning that the trial court's jury instruction improperly 'equated a reasonable doubt with a "grave uncertainty" and an "actual substantial doubt,["] and stated that what was required was a "moral certainty" that the defendant was guilty.' [Citation.] Later, the high court concluded that 'a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause.' [Citation.]

"By contrast, the jury in this case was given the standard pattern jury instructions on reasonable doubt and the consideration of circumstantial evidence. Thus reasonable doubt was defined as 'not a mere possible doubt because everything relating to human affairs and depending on moral evidence is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge.' (See CALJIC No. 2.90 (4th ed. 1979).) Thus, unlike *Cage* v. *Louisiana*, *supra*, there was no transformation of true reasonable doubt, as it has been traditionally defined, into a higher degree of doubt."

The court has reiterated its position in *People* v. *Johnson* (1992) 3 Cal.4th 1183 [14 Cal.Rptr.2d 702, 842 P.2d 1]; *People* v. *Sandoval* (1992) 4 Cal.4th 155, 185-186 [14 Cal.Rptr.2d 342, 841 P.2d 862], certiorari granted (1993) __ U.S. __ [125 L.Ed.2d 789, 114 S.Ct. 40];[15] *People* v. *Noguera* (1992) 4 Cal.4th 599, 633-634 [15 Cal.Rptr. 400, 842 P.2d 1160] (specifically holding that CALJIC No. 2.90 contains no "*Cage*-like dilution of the standard required to convict" (4 Cal.4th at p. 634)); and, most recently, in *People* v. *Sims* (1993) 5 Cal.4th 405 [20 Cal.Rptr.2d 537, 853 P.2d 992].

In his opening brief, Van Fossan manages to ignore *all* this precedent and to proceed on his own argument, totally unsupported by binding authority,

---

[15]In *Sandoval*, the court also responds to Justice Mosk's dissent in *People* v. *Brigham* (1979) 25 Cal.3d 283 [157 Cal.Rptr. 705, 599 P.2d 100], cited here by Van Fossan.

other than his misinterpretation of *Cage*. Finally, in his reply brief, after being confronted by the People with California Supreme Court decisions contrary to his position, he contends that they do not apply because they do not address the arguments he raised. He fails, however, to demonstrate in which way our Supreme Court's oft-repeated holding that CALJIC No. 2.90 does not violate *Cage* is inconsistent with his argument that it does. Van Fossan goes on to philosophize about the evils of the instruction's singular and almost unimportant reference to "moral evidence" and its more significant reliance upon moral certainty. However, he does so without citation to any binding authority whatsoever and in a less than persuasive manner. We are not prepared to contradict the clear dictate of the California Supreme Court by declaring CALJIC No. 2.90 to be constitutionally defective. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].)

c. *CALJIC No. 2.27\**

. . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed.

Dabney, J., and Hollenhorst, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 9, 1994.

---

*See footnote, *ante*, page 1680.